CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
APR 24 2018
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal Action No. 7:14CR00049 |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| BRANDON WALKER WHITTEN, ) | |
| ) | By: Hon. Glen E. Conrad |
| Defendant. ) | Senior United States District Judge |

This case is presently before the court on the defendant's motions to modify his conditions of supervised release and for appointment of counsel. For the reasons set forth below, the motion to modify the conditions of supervised release will be granted in part and denied in part, and the motion for appointment of counsel will be denied.

## Background

On August 21, 2014, a grand jury in the Western District of Virginia returned an indictment against the defendant, Brandon Walker Whitten. The indictment charged Whitten with multiple offenses involving child pornography. On October 17, 2014, Whitten entered a plea of guilty to Count One of the indictment, in which he was charged with receiving and/or distributing child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1).

In preparation for sentencing, a probation officer prepared a presentence investigation report (PSR) that summarized Whitten's offense conduct. According to the PSR, an undercover agent with the Federal Bureau of Investigation (FBI) downloaded images of child pornography from an internet protocol address assigned to Carole Streithof, Whitten's mother, in May of 2007. On January 15, 2008, FBI agents executed a search warrant at the home where Whitten and his mother resided. At that time, Whitten acknowledged that he had peer-to-peer file sharing

software on his computer, and that he had used the software to download images of child pornography. Whitten's laptop computer was seized during the execution of the search warrant, and a forensic examination of the device revealed approximately 50 images of child pornography.

In January of 2012, a witness contacted the FBI and reported that one of Whitten's neighbors had accused him of sexually molesting a six-month-old infant. The witness provided the infant's name but did not provide the name of the neighbor who had made the accusation. Later that year, the same witness contacted the FBI and reported that Whitten had used the witness's laptop computer to view child pornography on September 27, 2012. The witness consented to a forensic examination of the laptop. The examination revealed dozens of cartoon drawings depicting sexual abuse of prepubescent children, as well as a series of disturbing, sexually explicit messages on the computer's instant messaging service. The messages were communicated between a user account associated with Whitten and a user account utilized by an unknown person on September 27, 2012. They described potential sexual activity, including intercourse, with the same infant who Whitten had been accused of molesting.

On January 21, 2015, the court sentenced Whitten to a term of imprisonment of sixty months, to be followed by a twenty-year term of supervised release. Based on the nature of Whitten's offense and his history and characteristics, the court also imposed a number of special conditions of supervision. Whitten did not appeal any portion of his sentence or file a motion to vacate under 28 U.S.C. § 2255.

Whitten is scheduled to be released from imprisonment later this year. He has moved to modify a number of the special conditions of supervised release, arguing that they are

unconstitutionally vague and overbroad. The specific conditions Whitten complains of are as follows:

> (11) The defendant shall not use, purchase, possess, procure, or otherwise obtain any computer or electronic device or cellular telephone that can be linked to any computer networks, bulletin boards, the Internet, or other exchange formats involving computers unless approved by the probation officer for such purposes as the defendant's lawful gainful employment, use by an immediate family member living in the defendant's same household, or other legitimate activities. In addition, the defendant shall not access or use any computer that utilizes any "cleaning" or "wiping" software programs.
>
> (13) The defendant may only use and possess a cellular telephone that is limited to vocal telephone communication without the capability to access the Internet.
>
> (14) The defendant shall not purchase, possess, or use any camera or video recording devices without approval of the probation officer.
>
> (19) The defendant shall contact the probation officer within 72 hours of establishing an ongoing romantic relationship with another individual and provide the probation officer with information about the other party. The defendant shall also inform the other party of his or her prior criminal history concerning sex offenses.
>
> (20) The defendant shall not be in the company of or have contact with children under the age of 18, other than the defendant's own children, without prior permission of the probation officer. Contact includes but is not limited to letters, communication devices, audio or visual devices, and communication through a third party. The defendant shall immediately report any such contact to the probation officer.
>
> (21) The defendant shall not possess or have under his control any material depicting sexually explicit conduct involving adults or minors, child pornography, or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

> (22) The defendant shall not possess any sexually oriented material that, according to a qualified sex offender treatment provider, may interfere with an ongoing treatment regimen.
>
> (23) The defendant shall not utilize by any means any social networking forums offering an interactive user network of friends, personal profiles, blogs, chat rooms, or other environments which allow for interaction with others without prior approval of the probation officer.
>
> (26) The defendant shall not enter or be present at any establishment involved in the sex industry, including adult book stores, massage parlors, escort services, and strip bars.

Judgment at 4–5, Dkt. No. 38. The United States Probation Office has recommended that Whitten's conditions of supervised release not be modified at this time. The Probation Office recognizes, however, that certain modifications might be appropriate once Whitten has successfully completed a sex offender treatment program. The government has not responded to Whitten's motions.

## **Applicable Law**

District courts are afforded "broad latitude to impose conditions on supervised release." United States v. Dotson, 324 F.3d 256, 260 (4th Cir. 2003). "The court may impose any special condition that is 'reasonably related' to the statutory sentencing factors referenced in 18 U.S.C. § 3583(d)(1), which include: (1) 'the nature and circumstances of the offense and the history and characteristics of the defendant,' 18 U.S.C. § 3553(a)(1); and (2) 'the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct,' 18 U.S.C. § 3553(a)(2)(B), 'to protect the public from further crimes of the defendant,' 18 U.S.C. § 3553(a)(2)(c), and 'to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner,' 18 U.S.C. § 3553(a)(2)(D)." United States

v. Douglas, 850 F.3d 660, 663 (4th Cir. 2017). "When imposing such conditions, the sentencing court must also ensure that the condition 'involves no greater deprivation than is reasonably necessary' to serve these sentencing goals, 18 U.S.C. § 3582(d)(2), and that it 'is consistent with any pertinent policy statements issued by the Sentencing Commission,' 18 U.S.C. § 3583(d)(3)." Id.

Conditions of supervision may be challenged on direct appeal or in a motion to vacate under § 2255. See United States v. Dotson, 324 F.3d at 259 (observing that special conditions of supervised release are reviewed on direct appeal for abuse of discretion); United States v. Gross, 307 F.3d 1043, 1044 (9th Cir. 2002) (noting that the legality of a condition of supervised release may be challenged under § 2255). In addition, at any time prior to the expiration of supervision, the defendant may seek to modify conditions of supervised release. 18 U.S.C. § 3583(e)(2). When determining whether to "modify, reduce, or enlarge the conditions of supervised release," the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a), any pertinent provisions of the Federal Rules of Criminal Procedure, and "the provisions applicable to the initial setting of the terms and conditions of post-release supervision." Id.

Federal Rule of Criminal Procedure 32.1 addresses the procedural requirements for modifying conditions of supervised release. The Notes of the Advisory Committee explain that "conditions should be subject to modification, for the sentencing court must be able to respond to changes in the probationer's circumstances as well as new ideas and methods of rehabilitation." Fed. R. Crim. P. 32.1, advisory committee's note to 1979 addition. Before modifying a defendant's conditions of supervised release, "the court must hold a hearing, at which the [defendant] has the right to counsel and an opportunity to make a statement and present any

information in mitigation." Fed. R. Crim. P. 32.1(c)(1). A hearing is not required, however, if the defendant waives the hearing, or, as in this case, the relief sought is favorable to the defendant and the government has received notice of the relief sought, has had a reasonable opportunity to object, and has not done so. Fed. R. Crim. P. 32.1(c)(2).

## Discussion

### I. Scope of Authority under § 3583(e)(2)

Whitten contends that a number of the challenged conditions of supervised release are unconstitutionally vague or otherwise violate the Constitution and laws of the United States. The United States Court of Appeals for the Fourth Circuit has not directly addressed the precise factors a court can consider when deciding whether to modify conditions of supervision under § 3583(e)(2). The Second, Fifth, Ninth, and Eleventh Circuits have held that § 3583(e)(2) cannot be used as a vehicle to challenge the legality or constitutionality of supervised release conditions. See United States v. McClamma, 676 F. App'x 944, 947 (11th Cir. 2017) (joining the majority of its sister circuits and concluding that the district court lacked jurisdiction to review the defendant's argument that a condition was unconstitutional or substantively unreasonable) (citing United States v. Lussier, 104 F.3d 32, 34 (2d Cir. 1997); United States v. Hatten, 167 F.3d 884, 886 (5th Cir. 1999); United States v. Gross, 307 F.3d 1043, 1044 (9th Cir. 2002)). "The Seventh Circuit is the only circuit that does not bar substantive legal challenges to conditions of supervised release." McClamma, 676 F. App'x at 948 (citing United States v. Neal, 810 F.3d 512, 518–20 (7th Cir. 2016)). Based on the plain language of § 3583(e)(2) and the persuasive reasoning of the majority of the circuit courts to address the issue, the court concludes that

§ 3583(e)(2) may not be used to challenge the constitutionality or legality of a condition of supervised release.

Section 3583(e)(2) expressly states which factors a district court may consider when determining whether to modify a condition of supervised release. "Conspicuously absent" from the list of relevant factors are legality and constitutionality. Gross, 307 F.3d at 1043. Thus, the plain language of the statutory provision indicates that it may not be used to challenge the legality or constitutionality of a supervised release condition. McClamma, 676 F. App'x at 948; see also Lussier, 104 F.3d at 34 ("The plain language of subsection 3583(e)(2) indicates that the illegality of a condition of supervised release is not a proper ground for modification under this provision."). Moreover, as the Ninth Circuit explained in Gross:

> Congress, by enacting the Sentencing Reform Act of 1984, limited the manner in which a defendant may challenge the legality of a supervised release condition to: (1) direct appeal, (2) § 2255 habeas corpus relief, and (3) within [fourteen] days of the district court's decision, Rule 35[(a)] motion. It would frustrate Congress's intent if this court were to interpret § 3583(e)(2) to authorize a district court to modify or rescind an allegedly illegal condition.

Gross, 307 F.3d at 1044; see also Lussier, 104 F.3d at 37 ("The streamlined scheme of sentencing review established by the 1984 Act would be disrupted by the acceptance of [defendant's] interpretation of subsection 3583(e)(2). It would authorize the district court, at any time, to modify or rescind an allegedly illegal condition of supervised release. Nothing in the text or legislative history of section 3583(e), however, indicates that Congress intended to enact a mini version of the pre-1984 Rule 35(a) and make it applicable only to conditions of supervised release.").

In this case, Whitten chose not to challenge his special conditions of supervised release on direct appeal or in a § 2255 motion. The court is convinced that he "cannot now use § 3583(e)(2) as a vehicle to raise legal and constitutional arguments." McClamma, 676 F. App'x at 948; see also Gross, 307 F.3d at 1044 (emphasizing that § 3583(e)(3) "may not be used as a backdoor" to challenge the legality of supervised release conditions) (citation and internal quotation marks omitted). Consequently, the court lacks jurisdiction to consider Whitten's challenges to the legality or constitutionality of his special conditions of supervision.

## II. Modifications to Clarify Conditions and Address Changed Circumstances

Whitten also appears to argue that certain special conditions require clarification and/or modification in response to new or unforeseen circumstances. While the court lacks jurisdiction to review Whitten's legal and constitutional challenges, it "retains the power to modify [the] conditions to eliminate ambiguity and to adjust the conditions in response to changed circumstances." United States v. Cruz, 586 F. App'x 36, 41 (2d Cir. 2014); see also McClamma, 676 F. App'x at 947 (noting that new or unforeseen circumstances can justify a modification of supervised release conditions). Accordingly, the court will consider each category of challenged conditions in turn.

### A. Electronic devices

Whitten argues that Special Condition Nos. 11, 13, 14, and 23 constitute a "total ban" on Internet-accessible devices, and that such limitation is "overly constricting" in an era in which computers and the Internet are integral and ordinary components of modern life. Def.'s Mot. 4, Dkt. No. 44. To support this argument, Whitten cites to several cases from other circuits,

including United States v. Heckman, 592 F.3d 400 (3d Cir. 2000).[1] The defendant in Heckman was convicted of transporting child pornography. Id. at 402. On appeal, the Third Circuit held that a special condition imposing an unconditional, lifetime ban on Internet access "involved a 'greater deprivation of liberty than [was] reasonably necessary.'" Id. at 409 (quoting 18 U.S.C. § 3583(d)(2)); see also United States v. Duke, 788 F.3d 392, 399 (5th Cir. 2015) (emphasizing that "[n]o circuit court of appeals has ever upheld an absolute, lifetime Internet ban" and concluding that such ban was unreasonable in the case before it).

The facts of the instant case are distinguishable from those in Heckman. Unlike the condition at issue in that case, Special Condition Nos. 11, 14, and 23 do not completely and permanently prohibit Whitten from accessing the Internet. Instead, they permit the defendant to use Internet-accessible devices for legitimate activities during his term of supervision if he obtains approval from his probation officer. While such limitation may be inconvenient, it is far less restrictive than a lifetime, unconditional ban on all Internet access. Moreover, the court has no reason to doubt that Whitten's probation officer will reasonably exercise his or her discretion to permit him to utilize the Internet. Because Special Condition Nos. 11, 14, and 23 do not completely ban the use of Internet-accessible devices, and since the restrictions therein reasonably relate to the nature and circumstances of Whitten's offense, his history and

---

[1] Whitten also cites to United States v. Brigham, 569 F.3d 220 (5th Cir. 2009) and United States v. Love, 593 F.3d 1 (D.C. Cir. 2010). In both cases, special conditions restricting computer and Internet use were upheld on direct appeal. See Brigham, 569 F.3d at 232–34; Love, 593 F.3d at 11–13.

characteristics, the need to deter future crimes, and the need to protect the public, the court finds that these conditions do not require modification at this time.[2]

The court notes, however, that there is an inconsistency between Special Condition No. 11 and Special Condition No. 13. Although Special Condition No. 11 permits Whitten to "use, purchase, possess, procure, or otherwise obtain any . . . cellular telephone that can be linked to . . . the Internet" if "approved by the probation officer for . . . legitimate activities," Special Condition No. 13 states that Whitten "may only use and possess a cellular telephone that is limited to vocal telephone communication without the capability to access the Internet." Judgment at 4. To remedy this inconsistency and clarify which condition applies, the court will strike Special Condition No. 13 and require Whitten to adhere to the cellular telephone restrictions set forth in Special Condition No. 11.

**B.     Adult Pornography**

Whitten next seeks modification of Special Condition Nos. 21, 22, and 26 to the extent that they restrict his ability to possess or view adult pornography. In response, the Probation Office emphasizes that a restriction on access to sexually explicit material is often required as

---

[2] The court notes that the Supreme Court's recent decision in Packingham v. North Carolina, 137 S. Ct. 1730 (2017) does not counsel a different result. In Packingham, the Court struck down, on First Amendment grounds, a state statute that made it a felony for sex offenders to access social media and other Internet websites. See 137 S. Ct. at 1738. In the instant case, the conditions challenged by Whitten were "imposed as part of his supervised-release sentence," and are "not a post-custodial restriction of the sort imposed on Packingham." United States v. Rock, 863 F.3d 827, 831 (D.C. Cir. 2017); see also United States v. Browder, 866 F.3d 504, 511 n.26 (2d Cir. 2017) (emphasizing that Packingham involved an Internet ban that "extended beyond the completion of a sentence"). "Stated differently, Packingham dealt with a lifetime, state-wide statute restricting the internet access of all registered sex offenders," while this case involves "individual conditions, which are effective only for the duration of [the defendant's] supervised release." United States v. Farrell, No. 4:06-CR-103, 2018 U.S. Dist. LEXIS 29626, at *3 (E.D. Tex. 2018). In addition, the Supreme Court's decision is devoid of any indication that its holding extends to conditions of supervision. Id. Finally, for the reasons set forth above, the court lacks authority under § 3583(e)(2) to consider the type of constitutional challenge asserted in Packingham. Accordingly, any reliance on Packingham is misplaced.

10

part of the sex offender treatment that the defendant is ordered to complete as a condition of supervised release.

Having considered the applicable factors set forth in § 3583(e)(2), the court declines to modify Special Condition Nos. 21, 22, and 26 at this time. Upon release from incarceration, Whitten is required to "submit to an evaluation by a qualified mental health professional, approved by the probation officer, who is experienced in the treatment of sexual offenders." Special Condition No. 6, Judgment at 4. It is understood that the probation officer will consult with the treatment provider regarding the risks associated with Whitten viewing adult pornography, and that the probation officer and the treatment provider will assess the need for restrictions on access to such material on an ongoing basis. If it is determined that viewing adult pornography will not interfere with Whitten's treatment regimen, either party or the probation officer may request appropriate modifications.

### C. Contact and Relationship Restrictions

Whitten also challenges Special Condition Nos. 19 and 20. Special Condition No. 19 requires him to contact his probation officer within 72 hours of establishing an ongoing romantic relationship with another individual, and to inform such individual of his prior criminal history involving sex offenses. The court declines to modify this particular condition at this time. Whitten was married at the time of sentencing, his wife attended multiple proceedings, and he expressed a desire to reunite with his wife upon his release from imprisonment. Should Whitten's marital status change and he find Special Condition No. 19 to be unduly restrictive, he may renew his request to modify the condition.

11

Special Condition No. 20 restricts Whitten's ability to have contact with children under the age of eighteen, other than his own children, without prior permission from his probation officer. Whitten argues that this condition, as presently worded, would impose liability for "chance or inadvertent" encounters with minors while going about his daily life. Def.'s Mot. at 7. The court finds good cause to modify the condition to eliminate any ambiguity. Specifically, the court will add the following sentence to the end of Special Condition No. 20: "This provision does not encompass incidental contact with minors while engaging in ordinary daily activities in commercial establishments and other public places."

## Conclusion

For the reasons stated, Whitten's motion to modify his conditions of supervised release will be granted in part and denied in part, and his motion for appointment of counsel will be denied. Should Whitten's circumstances change upon his release from incarceration such that he has concerns about any of his conditions of supervised release, he is free to request modification at that time.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the defendant, the Probation Office, and all counsel of record.

DATED: This 23rd day of April, 2018.

_____
Senior United States District Judge